**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TRISTAN TANNER,
STEPHANIE AUGUSTIN,
SHIRLEY MCNEELY, and
TIERA HOLMES,
*On Behalf of Themselves and
All Others Similarly Situated*,

|  |  |
|---|---|
| | **Case No.** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LoanCare, LLC, | **INJUNCTIVE RELIEF SOUGHT** |
| Defendant. | |

_____/

**CLASS ACTION COMPLAINT**

Plaintiffs, on behalf of themselves and all others similarly situated, allege breaches of contract and violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), Florida Consumer Collection Practices Act § 559.72 ("FCCPA"), and Florida Deceptive and Unfair Trade Practices Act § 501.203 ("FDUTPA") against Defendant LoanCare, LLC ("Defendant" or "LoanCare").

1.     Defendant LoanCare, one of the largest servicers of residential mortgages in the country, routinely violates the FDCPA and state debt collection law, and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by phone or online ("Pay-to-Pay Fees"). LoanCare illegally charges homeowners fees between $5.00 and $15.00 for each online and telephone payment.

1

2.     The FDCPA prohibits LoanCare from collecting any amount in addition to the principal obligation unless *such amount is explicitly stated in the agreement creating the debt or permitted by law.* 15 U.S.C. § 1692f(1). But Pay-to-Pay Fees are found nowhere in the Uniform Mortgages and are not permitted by state debt collection law.

3.     LoanCare services mortgages throughout the United States and is supposed to be compensated out of the interest paid on each borrower's monthly payment. Here, LoanCare charged borrowers more for online and telephone Pay-to-Pay Fees than it spends to process those payments, pocketing the difference.

4.     Despite its uniform contractual obligations to charge only fees explicitly allowed under the Uniform Mortgages and applicable law, and only those amounts actually disbursed, LoanCare leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow LoanCare to pass along the actual costs of fees incurred to it by the borrowers—here, only a few cents per transaction.

5.     Plaintiffs Tristan Tanner, Stephanie Augustin, Shirley McNeely and Tiera Holmes all paid these Pay-to-Pay Fees, and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S. Code § 1332(d) because complete diversity exists between the Defendant and at least one member of the proposed class and the matter in controversy exceeds $5,000,000.

7.     This Court has personal jurisdiction because LoanCare conducts business in Florida and commits torts in Florida, as described in this Complaint. Fla. Stat. § 48.193(1)(a). Further, its

voluntary contact with Plaintiffs in connection with collection of debts not owed in Florida made it foreseeable that LoanCare would be haled into a Florida Court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

8.      Venue is proper because this is where the cause of action accrued. LoanCare transacts and/or conducts business here, and it illegally attempts to collect debts within this venue. 28 U.S.C. § 1391(b)(2).

### PARTIES

9.      Plaintiff Tristan Tanner is a natural person residing in Florida. During all relevant times stated herein, Mr. Tanner owned property in St. Petersburg, Florida that was secured by a mortgage. LoanCare was the servicer on the mortgage. On or about December 15, 2017, and June 29, 2018, LoanCare assessed a $12.00 fee when Mr. Tanner made a mortgage payment over the phone. On or about August 31, 2018, June 31, 2018, and March 30, 2018, LoanCare assessed a $15.00 fee when Mr. Tanner made a mortgage payment over the phone.

10.      Plaintiff Stephanie Augustin is a natural person residing in Florida. During all relevant times stated herein, Ms. Augustin owned property in Zephyrhills, Florida, secured by a mortgage. LoanCare was the servicer on the mortgage. Ms. Augustin makes mortgage payments online, and each time, LoanCare assesses her a $10.00 Pay-to-Pay Fee.

11.      Plaintiff Shirley McNeely is a natural person residing in Florida. During all relevant times stated herein, Ms. McNeely owned property in Ocala, Florida, that was secured by a mortgage. LoanCare was the servicer on the mortgage. Throughout the term of the mortgage, Ms. McNeely made mortgage payments online. Each time, LoanCare assessed Ms. McNeely a $5.00 Pay-to-Pay Fee.

12.     Plaintiff Tiera Holmes is a natural person residing in Louisiana. Ms. Holmes sometimes makes payments online or over the phone. When she does, LoanCare charges her a Pay-to-Pay Fee. Most recently, LoanCare charged Ms. Holmes a $15.00 fee on April 22, 2019.

13.     Defendant LoanCare is a Virginia corporation with a principal place of business at 3637 Sentara Way, Virginia Beach, VA 23452.

## APPLICABLE LAW

**FDCPA**

14.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

15.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

16.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

17.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

18.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

19.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

20.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

21.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FCCPA**

22.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

23.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

24.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

25.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

26.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

27.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at

collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

28.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

**FDUTPA**

29.     The FDUTPA is "construed liberally to promote" the protection of consumers and businesses from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

30.     The FDUTPA creates a private right of action for FDUTPA violations. *Id.* § 501.211.

31.     The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against consumers. *Id.* § 501.204(1).

32.     The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. *Id.* § 501.203(7).

33.     The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." *Id.* § 501.203(8).

34.     Where there is a violation of a statute prohibiting unfair or deceptive acts, a *per se* violation of Florida's FDUTPA has also occurred. *See* Fla. Stat. § 501.203(3) (stating a violation

of any law proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts is also a violation the FDUTPA); *Blair v. Wachovia Mortg. Corp.*, No. 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[A] *per se* violation of FDUTPA stems from the transgression of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.").

## FACTUAL ALLEGATIONS

35.     LoanCare is a loan servicer that operates across the country. Its principal purpose is to collect debt, and it uses interstate commerce to collect debt.

36.     Each time a mortgage borrower whose loan is serviced by LoanCare makes a loan payment online or over the phone, LoanCare charges the borrower a Pay-to-Pay Fee of between $5.00 and $15.00.

37.     The cost for LoanCare to process the Pay-to-Pay Transactions is well below the amounts charged to borrowers, and LoanCare illegally pockets the difference as profit.

38.     The uniform contractual obligations contained in the mortgages it services do not authorize LoanCare to assess Pay-to-Pay Fees.

39.     For example, Plaintiffs, like many borrowers, have FHA mortgages, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

40.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in

the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

41.     The Handbook does not authorize Pay-to-Pay Fees. LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

42.     At most, the mortgage uniform covenants allow LoanCare to pass along only the actual cost of fees incurred by it to the borrower.

43.     In short, the Uniform Mortgages do not authorize LoanCare to charge Pay-to-Pay Fees, and LoanCare violates its borrowers' Uniform Mortgages when it assesses such fees. LoanCare collects the Pay-to-Pay Fees even though it knows that such fees are not authorized by the mortgages and it therefore had no right to collect them.

**Plaintiff Holmes**

44.     On or about November 2, 2011, Ms. Holmes purchased property in Jefferson Parish, Louisiana, secured by a mortgage from American Financial Resources, Inc. Ms. Holmes took out the mortgage loan secured by her property for personal, family, or household uses.

45.     LoanCare became the servicer of the mortgage. At the time LoanCare acquired the servicing rights, Ms. Holmes's mortgage was in default.

46.     LoanCare's principal purpose is to collect debt, and it used interstate commerce to collect debt. Furthermore, LoanCare acquired the loan in default. Thus, LoanCare is a "debt collector" under the FDCPA.

47.     Ms. Holmes sometimes makes payments online or over the phone. When she does, LoanCare charges her a Pay-to-Pay Fee. For example, LoanCare charged Ms. Holmes a $15.00 fee on April 22, 2019.

48.      These fees were not authorized by Ms. Holmes's Mortgage Agreement.

49.     Ms. Holmes's Mortgage Agreement ("Holmes Mortgage") is enclosed as **Exhibit A**. Ms. Holmes has an FHA mortgage.

50.     LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 8 of the Holmes Mortgage. Like other FHA mortgages, the Holmes Mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 8.

51.     By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Holmes Mortgage.

52.     The Holmes Mortgage states that the mortgage "shall be governed by Federal law and the law of the jurisdiction in which the property is located," i.e., Louisiana. Ex. A ¶ 14.

53.     LoanCare's collection of the Pay-to-Pay Fees violated the FDCPA ("Federal Law") because the Holmes Mortgage does not expressly allow LoanCare to charge Pay-to-Pay Fees. *See* 16 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

54.     Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 7, "Charges to Borrower and Protection of Lender's Rights in the Property," that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 7 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. Holmes's mortgage, LoanCare violated ¶ 7 of the Holmes Mortgage.

55.     Because the above provisions are contained in the "Uniform Covenants" section of the FHA mortgage, LoanCare has breached its contracts on a class-wide basis.

56.     Ms. Holmes gave LoanCare an opportunity to cure its breach of contract and statutory violations, but LoanCare failed to do so.

**Plaintiff Tanner**

57.     On or around August 8, 2016, Mr. Tanner purchased a home in Pinellas County, Florida through a loan from First Federal Bank of Florida, secured by a mortgage on the property. Mr. Tanner made timely mortgage payments. Mr. Tanner's mortgage was serviced by LoanCare.

58.     Throughout the term of the mortgage, Mr. Tanner occasionally made monthly mortgage payments over the phone.

59.     LoanCare charged Mr. Tanner a Pay-to-Pay Fee each time he made his monthly mortgage payment over the phone. On or about December 15, 2017, and June 29, 2018, LoanCare assessed a $12.00 fee to make a mortgage payment over the phone. On or about August 31, 2018, June 31, 2018, and March 30, 2018, LoanCare assessed a $15.00 fee to make a mortgage payment over the phone.

60.      These fees were not authorized by Mr. Tanner's Mortgage Agreement.

61.     Mr. Tanner's Mortgage Agreement ("Tanner Mortgage") is enclosed as **Exhibit B**. Mr. Tanner has an FHA mortgage.

62.     LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 13 of the Tanner Mortgage. Like other FHA mortgages, the Tanner Mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. B ¶ 13.

63.     By assessing Pay-to-Pay Fees not "authorized by the Secretary," LoanCare violated the uniform covenants of the Tanner Mortgage.

64.     Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. B ¶ 13.

65.     The Tanner Mortgage defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  *See* Ex. B ¶ I.

66.     Since the Mortgage Agreement does not expressly allow LoanCare to charge Pay-to-Pay Fees, such fees are prohibited by the FCCPA, *i.e.*, "Applicable Law." *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

67.     By charging the Pay-to-Pay Fees, LoanCare has violated the "Applicable Law" provision, as defined by the Tanner Mortgage, and thus breached its contract.

68.     Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower.  *See* Ex. B ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Mr. Tanner's mortgage, LoanCare violated ¶ 9 of the Tanner Mortgage.

69.     LoanCare deceived Mr. Tanner by assessing him more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

70.     Because the above provisions are contained in the "Uniform Covenants" section of the FHA mortgage, LoanCare has breached its contracts on a class-wide basis.

71.     Mr. Tanner gave LoanCare an opportunity to cure its breach of contract and statutory violations, but LoanCare failed to do so.

**Plaintiff Augustin**

72.     On or about September 28, 2017, Ms. Augustin purchased a home in Pasco County, Florida, financed by a loan from DHI Mortgage Company. At some point, LoanCare became the servicer for the mortgage.

11

73.     Ms. Augustin made timely mortgage payments.

74.     Throughout the term of the mortgage, Ms. Augustin made mortgage payments online. Each time, LoanCare assessed Ms. Augustin a $10.00 Pay-to-Pay Fee.

75.     These fees were not authorized by Ms. Augustin's Mortgage Agreement.

76.     Ms. Augustin's Mortgage Agreement ("Augustin Mortgage") is enclosed as **Exhibit C**. Ms. Augustin has an FHA mortgage.

77.     LoanCare's demands for payment of Pay-to-Pay Fees were a direct breach of Paragraph 13 of the Augustin Mortgage. Like other FHA mortgages, the Augustin Mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. C ¶ 13.

78.     By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Augustin Mortgage.

79.     Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. C ¶ 13.

80.     The Augustin Mortgage defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Ex. C ¶ I.

81.     Since the Augustin Mortgage does not expressly allow LoanCare to charge Pay-to-Pay Fees, such fees are prohibited by the FCCPA, *i.e.*, "Applicable Law." *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal

Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

82.     By charging the Pay-to-Pay Fees, LoanCare has violated the "Applicable Law" provision, as defined by the Augustin Mortgage, and thus breached its contract.

83.     Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower.  *See* Ex. C ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. Augustin's mortgage, LoanCare violated ¶ 9 of the Augustin Mortgage.

84.     LoanCare deceived Ms. Augustin by assessing her more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

85.     Because the above provisions are contained in the "Uniform Covenants" section of the FHA mortgage, LoanCare has breached its contracts on a class-wide basis.

86.     Ms. Augustin gave LoanCare an opportunity to cure its breach of contract and statutory violations, but LoanCare failed to do so.

**Plaintiff McNeely**

87.     On or about March 29, 2012, Ms. McNeely purchased property in Marion County, Florida, secured by a mortgage from Embrace Home Loans, Inc. At some point, LoanCare became the servicer. Ms. McNeely made timely mortgage payments.

88.     Throughout the term of the mortgage, Ms. McNeely made mortgage payments online. Each time, LoanCare assessed Ms. McNeely a $5.00 Pay-to-Pay Fee.

89.     These fees were not authorized by Ms. McNeely's Mortgage Agreement.

90.     Ms. McNeely's Mortgage Agreement ("McNeely Mortgage") is enclosed as **Exhibit D**. Ms. McNeely has an FHA mortgage.

91.     LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 8 of the McNeely Mortgage. Like other FHA mortgages, the McNeely Mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. D ¶ 8.

92.     The Handbook does not specifically mention Pay-to-Pay Fees. Upon information and belief, LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees. By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the McNeely Mortgage.

93.     The McNeely Mortgage states that the mortgage "shall be governed by Federal law and the law of the jurisdiction in which the property is located," i.e., Florida. Ex. D ¶ 14.

94.     Since the McNeely Mortgage does not expressly allow LoanCare to charge Pay-to-Pay Fees, such fees are prohibited by the FCCPA, *i.e.*, "Governing Law." *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added). When LoanCare charged Pay-to-Pay Fees not authorized by the McNeely Mortgage, it violated the FCCPA.

95.     Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 7, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by the lender" to become the debt of the borrower.  *See* Ex. D ¶ 7 (emphasis added). By assessing more than the amounts it

14

actually disbursed to the balance of Ms. McNeely's mortgage, LoanCare violated ¶ 7 of the McNeely Mortgage.

96.     LoanCare deceived Ms. McNeely by assessing her more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

97.     Because the above provisions are contained in the "Uniform Covenants" section of the FHA mortgage, LoanCare has breached its contracts on a class-wide basis.

98.     Ms. McNeely gave LoanCare an opportunity to cure its breach of contract and statutory violations, but LoanCare failed to do so.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of the following classes of persons, subject to modification after discovery and case development:

> **Nationwide FDPCA Class:** All persons who were borrowers on residential mortgage loans that were not owned by LoanCare and to which LoanCare acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations, and paid a fee to LoanCare for making a loan payment by telephone, an Interactive Voice Response system ("IVR"), or the internet, during the applicable statutes of limitations through the date a class is certified.

> **Florida Class:** All persons with a Florida address who were borrowers on residential mortgage loans to which LoanCare acquired servicing rights, and paid a fee to LoanCare for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.

> **Louisiana Class**: All persons with a Louisiana address who were borrowers on residential mortgage loans to which LoanCare acquired servicing rights, and paid a fee to LoanCare for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.

100.    Class members are identifiable through Defendant's records and payment databases.

101.    Excluded from the classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

102.    Plaintiffs propose that they be appointed as class representative.

103.    Plaintiffs and the Classes have all been harmed by the actions of Defendant.

104.    Numerosity is satisfied. Upon information and belief, there are thousands of class members.  Individual joinder of these persons is impracticable.

105.    There are questions of law and fact common to Plaintiffs and the Classes, including, but not limited to:

a.    Whether LoanCare violated the FDCPA by charging Pay-to-Pay Fees not due;

b.    Whether LoanCare violated the FCCPA by charging Pay-to-Pay Fees not due;

c.    Whether LoanCare violated general provisions of the FDUTPA by charging Pay-to-Pay Fees not due;

d.    Whether the violations of the FCCPA were *per se* violations of the FDUTPA;

e.    Whether LoanCare breached its mortgage agreements by charging Pay-to-Pay Fees not due;

f.    Whether LoanCare's costs of the Pay-to-Pay Transactions are less than the amount it charged for Pay-to-Pay fees;

g.    Whether Plaintiffs and the Class members are entitled to injunctive relief;

h.    Whether Plaintiffs and the Class Members are entitled to actual and/or statutory damages as a result of Defendant's actions; and

i.    Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

106.    Plaintiffs' claims are typical of the claims of class members.  LoanCare charged Plaintiffs Pay-to-Pay Fees in the same manner as the Class Members.  Plaintiffs and the Class Members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges.  Alternatively, if LoanCare is allowed under the Mortgage Agreements to charge Pay-to-Pay Fees, such amount is capped at the actual amounts disbursed by LoanCare to process the Pay-to-Pay Transactions.

107.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members and they will fairly and adequately protect the interests of the Class.  Plaintiffs have taken actions before filing this Complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

108.    Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

109.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

110.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692** *et seq.*
**On behalf of Plaintiff Holmes and the Nationwide FDCPA Class**

111.    Paragraphs 1 to 110 are hereby incorporated by reference.

112.    This action is maintainable as a nationwide class action pursuant to 15 U.S.C. § 1692k(a)(2)(b).

17

113.   The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

114.   Because LoanCare regularly collects debts owed others and because it acquired the loans of Plaintiff and the Nationwide FDCPA Class members while those loans were in default, it qualifies as a debt collector under the FDCPA.

115.   The Mortgage Agreements of Ms. Holmes and the Nationwide FDCPA Class members do not expressly authorize LoanCare to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit LoanCare to collect the actual amount disbursed to process the Pay-to-Pay transactions.

116.   Although the Mortgage Agreements do not expressly authorize collection of Pay-to-Pay Fees, LoanCare collected such fees anyway.

117.   In so doing, LoanCare violated 15 U.S.C. § 1692f(1).

118.   LoanCare intentionally, frequently, and persistently collected Pay-to-Pay Fees from Ms. Holmes and the Nationwide FDCPA Class Members.

119.   Ms. Holmes and the Nationwide FDCPA Class Members were harmed as a result of LoanCare's conduct.

120.   As a result of each and every violation of the FDCPA, Ms. Holmes and the Nationwide FDCPA Class members are entitled to actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) from LoanCare.

**COUNT II**
**VIOLATION OF THE FLORIDA CONSUMER PROTECTION PRACTICES ACT**
**Fla. Stat. § 555.72(9)**
**On behalf of Plaintiffs Tanner, Augustin, McNeely, and the Florida Class**

121.    Paragraphs 1 to 110 are hereby incorporated by reference.

122.    Plaintiffs and the Florida Class Members are "consumers" as defined by Fla. Stat. § 559.55(8).

123.    Defendant is a "person" as stated in the FCCPA.

124.    Plaintiffs and the Florida Class Members purchased their homes by residential mortgage for personal, family or household use.

125.    Defendant attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it charged, attempted to collect, and collected Pay-to-Pay Fees. *Id.* § 559.72(9).

126.    Defendant's acts of illegally attempting to collect a debt from Plaintiffs and the Florida Class Members and deliberately charging monthly Pay-to-Pay Fees constitutes a knowing violation of § 559.72(9) of the FCCPA.

127.    As a result of Defendant's FCCPA violations, Plaintiffs and the Florida Class Members suffered substantial damages, including but not limited to financial damage incurred from Defendant's illegal Pay-to-Pay Fees.

**COUNT III**
**VIOLATION OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 501.203(3), 501.204**
**On Behalf of Plaintiffs Tanner, Augustin, McNeely, and the Florida Class**

128.    Paragraphs 1 to 110 are hereby incorporated by reference.

129.    Plaintiffs and the Florida Class Members are "consumers" as defined by Fla. Stat. § 501.203(7).

130.    Defendant engaged in "trade or commerce" as defined by § 501.203(8) when it attempted to collect, and collected, a debt associated with mortgage payments.

131.    Defendant violated § 559.72(9) of the FCCPA when it attempted to collect, and collected, a debt associated with mortgage payments.

132.    A violation of Fla. Stat. § 559.72(9) of the FCCPA is a per se violation of FDUTPA under Fla. Stat. § 501.203(3).

133.    In addition to the above-referenced per se FDUTPA violations, Defendant also generally violated FDUTPA under Fla. Stat. § 501.204(1) when it engaged in unfair and deceptive practices in trade or commerce by taking advantage of consumers in claiming and collecting debts for amounts not owed.

134.    Defendant never informed Plaintiffs and the Florida Class Members when they made their Pay-to-Pay Fee payments that the actual cost to Defendant for the Pay-to-Pay Transactions was far less than the amount charged in Pay-to-Pay Fees.

135.    As a result of Defendant's FDUTPA violations, Plaintiffs and the Florida Class Members suffered substantial damage, including but not limited to financial damage incurred from Defendant's unlawful Pay-to-Pay Fees.

**COUNT IV**
**BREACH OF CONTRACT**
**On Behalf of Plaintiffs Tanner, Augustin, McNeely, and the Florida Class; and**
**Plaintiff Holmes and the Louisiana Class**

136.    Paragraphs 1 to 110 are hereby incorporated by reference.

137.    Plaintiffs and the Class Members are parties to contracts with LoanCare. LoanCare became bound as an assignee to the mortgages of Plaintiffs and the members of the Classes when it became their servicer. LoanCare breached its contracts with Plaintiffs and the Class Members

when it charged Pay-to-Pay Fees in violation of the Uniform Mortgages and in excess of the amounts actually disbursed by LoanCare to pay for the cost of the Pay-to-Pay Transactions.

**The Holmes Breach**

138.     Ms. Holmes purchased a home subject to the Holmes Mortgage. *See* Ex. A.

139.     When LoanCare became the servicer of her mortgage, it became a party to the Holmes Mortgage. Thus, LoanCare became bound as an assignee by the Holmes Mortgage with Ms. Holmes whereby money was lent to Ms. Holmes to purchase property in exchange for certain payment over time.

140.     Ms. Holmes sometimes makes payments online or over the phone. When she does, LoanCare charges her a Pay-to-Pay Fee. For example, LoanCare charged Ms. Holmes a $15.00 fee on April 22, 2019. These fees violated the Holmes Mortgage.

141.     The Holmes Mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 8.

142.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

143.     The Handbook does not authorize Pay-to-Pay Fees. LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

144.    By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Holmes Mortgage.

145.    Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 7, "Charges to Borrower and Protection of Lender's Rights in the Property," that section permits only "amounts *disbursed* by the lender" to become the debt of the borrower.  *See* Ex. A ¶ 7 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. Holmes's mortgage, LoanCare violated ¶ 7 of the Holmes Mortgage.

**The Tanner Breach**

146.    Mr. Tanner purchased a home subject to the Tanner Mortgage. *See* Ex. B.

147.    When LoanCare became the servicer of her mortgage, it became a party to the Tanner Mortgage. Thus, LoanCare became bound as an assignee by the Tanner Mortgage with Mr. Tanner whereby money was lent to Mr. Tanner to purchase property in exchange for certain payment over time. Mr. Tanner made timely loan payments.

148.    Throughout the term of the mortgage, Mr. Tanner made monthly mortgage payments over the phone.

149.    LoanCare has charged Mr. Tanner a Pay-to-Pay Fee each time he made his monthly mortgage payment over the phone. On or about December 15, 2017, and June 29, 2018, LoanCare assessed a $12.00 fee to make a mortgage payment over the phone. On or about August 31, 2018, June 31, 2018, and March 30, 2018, LoanCare assessed a $15.00 fee to make a mortgage payment over the phone.

150.    These fees were not authorized by Mr. Tanner's Mortgage Agreement.

151.    LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 13 of the Tanner Mortgage. Paragraph 13 states that "Lender may collect fees and charges authorized by the Secretary."

152.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

153.    The Handbook does not authorize Pay-to-Pay Fees. LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

154.    By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Tanners Mortgage.

155.    Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. B ¶ 13.

156.    The Tanner Mortgage defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  *See* Ex. B ¶ I.

157.    Since the Mortgage Agreement does not expressly allow LoanCare to charge Pay-to-Pay Fees, such fees are prohibited by the FCCPA, *i.e.*, "Applicable Law." *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and

construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

158.    By charging the Pay-to-Pay Fees, LoanCare has violated the "Applicable Law" provision, as defined by its Mortgage Agreement, and thus breached its contract.

159.    Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by the lender" to become the debt of the borrower.  *See* Ex. B ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Mr. Tanner's mortgage, LoanCare violated ¶ 9 of the Tanner Mortgage.

**The Augustin Breach**

160.    Ms. Augustin purchased a home subject to the Augustin Mortgage. *See* Ex. C.

161.    When LoanCare became the servicer of her mortgage, it became a party to the Augustin Mortgage. Thus, LoanCare became became bound as an assignee by the Augustin Mortgage with Ms. Augustin whereby money was lent to Ms. Augustin to purchase property in exchange for certain payment over time. Ms. Augustin made timely mortgage payments.

162.    Throughout the term of the mortgage, Ms. Augustin made mortgage payments online. Each time, LoanCare assessed Ms. Augustin a $10.00 Pay-to-Pay Fee.

163.     These fees were not authorized by Ms. Augustin's Mortgage Agreement.

164.    LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 13 of the Augustin Mortgage. Paragraph 13 states that "Lender may collect fees and charges authorized by the Secretary." Ex. C ¶ 13.

165.    The Handbook does not specifically mention Pay-to-Pay Fees. Upon information and belief, LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees. By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Augustin Mortgage.

166.    Paragraph 13 also states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. C ¶ 13.

167.    The Augustin Mortgage defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Ex. C ¶ I.

168.    Since the Augustin Mortgage does not expressly allow LoanCare to charge Pay-to-Pay Fees, such fees are prohibited by the FCCPA, *i.e.*, "Applicable Law." *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *id.* § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

169.    By charging the Pay-to-Pay Fees, LoanCare has violated the "Applicable Law" provision, as defined by the Augustin Mortgage, and thus breached its contract.

170.    Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by the lender" to become the debt of the borrower.  *See* Ex. C ¶ 9 (emphasis added). By assessing more than the amounts it

actually disbursed to the balance of Ms. Augustin's mortgage, LoanCare violated ¶ 9 of the Augustin Mortgage.

**The McNeely Breach**

171.    Ms. McNeely purchased a home subject to the McNeely Mortgage. *See* Ex. D.

172.    When LoanCare became the servicer of her mortgage, it became a party to the McNeely Mortgage. Thus, LoanCare became became bound as an assignee by the McNeely Mortgage with Ms. McNeely whereby money was lent to Ms. McNeely to purchase property in exchange for certain payment over time.

173.    Throughout the term of the mortgage, Ms. McNeely made mortgage payments online. Each time, LoanCare assessed Ms. McNeely a $5.00 Pay-to-Pay Fee.

174.     These fees were not authorized by Ms. McNeely's Mortgage Agreement.

175.    LoanCare's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 8 of the McNeely Mortgage. Paragraph 8 states that "Lender may collect fees and charges authorized by the Secretary." Ex. D ¶ 8.

176.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

177.    The Handbook does not authorize Pay-to-Pay Fees. LoanCare has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

178.    By assessing Pay-to-Pay Fees not authorized by the Secretary, LoanCare violated the Holmes Mortgage.

179.    Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 7, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by the lender" to become the debt of the borrower.  *See* Ex. D ¶ 7 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. Augustin's mortgage, LoanCare violated ¶ 7 of the McNeely Mortgage.

180.    The above paragraphs that LoanCare breached are contained in the Uniform Covenants sections of each of the Class Members' mortgages. LoanCare has breached its contracts on a classwide basis.

181.    Plaintiffs and the Class Members were harmed by these breaches.

## JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

182.    Plaintiffs are entitled to and respectfully demand a trial by jury on all issues so triable.

183.    Plaintiffs reserve the right to amend the Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

WHEREFORE. Plaintiffs, on behalf of themselves and the Classes, respectfully request this Court to enter judgment against Defendant for all of the following:

a.    That Plaintiffs and all Class Members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiffs and all Class Members be awarded statutory damages;

c.    That Plaintiffs and all Class Members be awarded costs and attorney's fees;

d.    That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

e.    That the Court certify Plaintiffs' claims under Fed. R. Civ. P. 23; and

f.    Such other and further relief as the Court may deem just and proper.

Dated:   January 10, 2020        Respectfully Submitted,

/s/ *James L. Kauffman*
James L. Kauffman (Fla. Bar No. 12915)
BAILEY GLASSER LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone:  (202) 463-2101
Facsimile:  (202) 463-2103
Email: jkauffman@baileyglasser.com

Hassan A. Zavareei (*pro hac vice* application to be filed)
**Trial Counsel**
Katherine M. Aizpuru (*pro hac vice* application to be filed)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
       kaizpuru@tzlegal.com

V. Chai Oliver Prentice (*pro hac vice* application to be filed)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
Email: vprentice@tzlegal.com

*Counsel for Plaintiffs*